UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
                              )
JEFFREY MEDINA,               )
     Petitioner,              )
                              )
v.                            )     CIVIL ACTION
                              )     NO. 06-cv-40242-DPW
                              )
LOIS RUSSO, et al.,           )
     Superintendent,          )
     Respondents.             )
                              )
```

MEMORANDUM AND ORDER
August 19, 2010

Petitioner Jeffrey Medina seeks federal habeas corpus relief from his convictions in Massachusetts state court.  On May 24, 1999, following an acquittal on similar charges by a Franklin County jury, a Worcester County jury convicted him of three counts of rape of a child, MASS. GEN. LAWS ch. 265 § 23, and five counts of indecent assault and battery of a child under the age of fourteen, *id*. at § 13B, arising from his conduct with his stepdaughter.  Medina was sentenced to concurrent life terms for two of the rape convictions, a twenty-year term of probation for the other rape conviction, followed by concurrent sentences of twenty to thirty years for each of the five indecent assault and battery convictions.

On November 13, 2006, Medina filed this petition under 28 U.S.C. § 2254 pressing claims for habeas relief based on grounds of double jeopardy, refusal to give a specific unanimity

instruction, judicial misconduct, and ineffective assistance of counsel.

## I. BACKGROUND

### A.   *Factual Background*

A federal court evaluating a habeas petition must presume the state court factual determinations are correct. 28 U.S.C. § 2254(e)(1); *Teti v. Bender*, 507 F.3d 50, 57 (1st Cir. 2007). The following facts are drawn from the Massachusetts Appeals Court decision in this case, *see Commonwealth v. Medina*, 835 N.E.2d 300 (Mass. App. Ct. 2005), because the presumption of correctness also applies when a state appellate court recites factual findings. *Teti*, 507 F.3d at 58.

At trial,[1] the victim who was then nineteen-years-old, testified that Medina, her stepfather, began sexually abusing her when she lived with him, her mother, and her younger brother in an apartment on Washington Street in the Worcester County community of Gardner. *Medina*, 835 N.E.2d at 306. This conduct occurred in Worcester County when the victim was between ten and twelve years old. *Id.* at 306 n.3. The victim testified that Medina touched her breasts and vagina, put his penis on her vagina, licked her vagina, and made her perform oral sex on him.

---

[1] The Massachusetts Appeals Court, which has provided the last reasoned decision of the state courts, drew its factual background from the record of the retrial in Worcester County. *Medina*, 835 N.E.2d at 306.

*Id.* at 306.  The abuse continued after the family moved to a new apartment on Chestnut Street in Gardner.  *Id.*  There, Medina had vaginal sex with the victim and forced her to perform oral sex on him "a lot."  *Id.*

Russ Aukstikalnis, who boarded with the family in both apartments in Gardner, testified that, on more than one occasion while living on Chestnut Street, he witnessed the victim enter Medina's bedroom late at night, and always when her mother was not at home.  *Id.*  The victim's brother testified that he observed Medina touching his sister's vagina and breasts with his penis at the Chestnut Street apartment.  *Id.* at 306-07.  The brother, who was afraid of Medina, did not speak about the abuse of his sister until 1997.  *Id.* at 307.

One night in 1992 not identified by date in the record, the victim's mother returned home from work around 1:30 AM and discovered the victim in bed with Medina.  *Id.*  The victim seemed to be asleep, but Medina was awake smoking a cigarette.  *Id.*  The mother confronted Medina about what had been going on, and he did not answer.  *Id.*  After removing her daughter from the bedroom and having a "sharp exchange" with Medina, the mother went to sleep on the living room sofa.  *Id.*

The following day, the victim told her mother that nothing had happened with the defendant.  *Id.*  Later, Aukstikalnis told the mother about his observations of the victim going into

3

Medina's bedroom at night. *Id.* The mother, as a result, quit her job and went to a shelter with her children. *Id.* She divorced Medina in 1995. *Id.* at 307 n.7.

In November 1996, the victim moved to Ohio to live with her biological father and stepmother; she attended school there, made the honor roll, and got along well with her family. *Id.* at 307. In April 1997, however, the father told the victim that her mother was living with Medina again. *Id.* The victim then locked herself in her bedroom and broke some of her belongings; her behavior led to an argument in which she hit her father and pushed her pregnant stepmother. *Id.* The police were called, but before they arrived, the victim told her father that Medina had abused her. *Id.* A judge directed the victim to attend counseling, and the abuse was reported to authorities in Massachusetts. *Id.* Medina was subsequently charged in both Franklin and Worcester counties. *Id.*

**B.  *Procedural History***

On November 14, 1997, Medina was indicted in Worcester County for three counts of rape of a child and five counts of indecent assault and battery of a child under fourteen, committed in that county on "diverse dates" between January 1, 1991 and April 12, 1993. *Id.* at 305. On November 17, 1997, a grand jury in Franklin County indicted Medina for two counts of rape and two

counts of indecent assault and battery of a child under the age
of fourteen against the same victim; these acts allegedly
occurred at different locations in that county between January 1,
1986 through December 31, 1990 and October 15, 1992 through March
31, 1993. *Id.*

On April 5, 1999, the day before trial was scheduled to
begin in Worcester County, Medina filed a motion in the Superior
Court in Franklin County to transfer the pending case there to
Worcester County and to join and consolidate the cases into one
trial. *Id.* The motion was denied. *Id.*

Medina's jury trial in Worcester County commenced the next
day on April 6, 1999, and resulted in a mistrial on April 9, 1999
after the jury deadlocked. *Id.* On April 14, 1999, the Franklin
County trial began, and the jury there acquitted Medina on all
charges in the indictments issued in that county. *Id.*

In May 1999, Medina was retried on the Worcester indictments
in Worcester County, and was convicted by a jury on all charges.
*Id.* Immediately afterwards, a bench trial was held, with
Medina's assent, and the judge found that the assault and battery
convictions were Medina's second and subsequent offenses. *Id.*
Following sentencing, Medina moved for a new trial, which a
different judge denied. *Id.* at 305-06.

Medina appealed both his conviction and the order denying
him a new trial. *Id.* at 306. Both judgments were affirmed by

the Massachusetts Appeals Court. *Id.* Medina unsuccessfully
sought further appellate review in the Supreme Judicial Court of
Massachusetts ("SJC"). *Commonwealth v. Medina*, 838 N.E.2d 576
(Mass. Nov. 30, 2005) (Table).

## II. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996
("AEDPA") empowers federal courts to entertain a habeas petition
by a prisoner in state custody "only on the ground that he is in
custody in violation of the Constitution or laws . . . of the
United States."  28 U.S.C. § 2254(a).  The petition cannot be
granted unless the petitioner has exhausted the available state
court remedies.  § 2254(b)(1)(A).  If a state court has
adjudicated a claim on the merits, then a federal court may only
grant the habeas petition if the adjudication of that claim
resulted in a decision that was (1) "contrary to, or involved an
unreasonable application of, clearly established Federal law, as
determined by the Supreme Court of the United States"; or (2)
"based on an unreasonable determination of the facts in light of
the evidence presented in the State court proceeding."
§ 2254(d).

The First Circuit has advised that "[a] state-court decision
is contrary to clearly established federal law if the state court
employs a rule that contradicts an existing Supreme Court
precedent or if it reaches a different result on facts materially

indistinguishable from those of the controlling Supreme Court precedent." *Janosky v. St. Amand*, 594 F.3d 39, 47 (1st Cir. 2010) (citing *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)).

An unreasonable application of clearly established federal law occurs if a state court decision "identifies the correct rule, but applies that rule unreasonably to the facts of the case sub judice." *Id.* (citing *Williams*, 529 U.S. at 407-08). Unreasonableness is an objective standard, and "an erroneous or incorrect application is not necessarily an unreasonable application." *McCambridge v. Hall*, 303 F.3d 24, 36 (1st Cir. 2002) (citing *Williams*, 529 U.S. at 410-11); *see also Janosky*, 594 F.3d at 47 ("To justify federal intervention, the state court's application must be both incorrect and unreasonable."). "Under this deferential standard, the state court's decision is not vulnerable unless it evinces some increment of incorrectness beyond mere error." *Grant v. Warden, Maine State Prison*, - - - F.3d - - -, No. 09-2362, 2010 WL 3220654, at *3 (1st Cir. Aug. 17, 2010) (citations and quotation marks omitted).

## III. DISCUSSION

The SJC summarily denied Medina's application for further appellate review, *see Commonwealth v. Medina*, 838 N.E.2d 576, and therefore, for purposes of evaluating this habeas petition, I "'look through' to 'the last reasoned decision,' which is the decision of the Massachusetts Appeals Court" to affirm Medina's

7

convictions.  *Malone v. Clark*, 536 F.3d 54, 63 n.6 (1st Cir.

2008) (quoting *Gunter v. Maloney*, 291 F.3d 74, 80 (1st Cir.

2002)).

### A.   *Double Jeopardy*

Medina argues that his Fifth Amendment rights under the

Double Jeopardy Clause were violated because he was tried three

times for the same offenses, on indictments with overlapping

dates, and on the basis of witness testimony in those trials

which was allegedly identical.[2]

The Fifth Amendment directs that no person shall "be subject

for the same offence to be twice put in jeopardy of life or

limb."  U.S. CONST. amend. V.  This protection extends to state

prosecutions through the Due Process Clause of the Fourteenth

---

[2] Medina also contends that the trial court erred by denying his request to consolidate the Worcester and Franklin cases. Under the Massachusetts Rules of Criminal Procedure, "[i]f a defendant is charged with two or more related offenses, either party may move for joinder of such charges.  The trial judge shall join the charges for trial unless he determines that joinder is not in the best interests of justice."  MASS. R. CRIM. P. 9(a)(3).  The Appeals Court, noting that the judge did not furnish a written statement in support of his decision to deny the motion for a joint trial, concluded that "[w]e must assume the judge determined that a joint trial was not in the best interests of justice, especially considering that the Worcester trial was scheduled to commence the following day."  *Medina*, 835 N.E.2d at 309-10.  This conclusion, the Appeals Court held, "was clearly within the bounds of the judge's considerable discretion."  *Id.* at 310.  I cannot and do not review whether the Appeals Court's decision was erroneous because federal habeas review is limited to addressing asserted violations of federal law, not state law.  *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).

Amendment.[3]  *Monge v. California*, 524 U.S. 721, 727 (1998).  The Double Jeopardy Clause protects a defendant from three scenarios: "successive prosecutions for the same offense after [i] acquittal or [ii] conviction and against [iii] multiple criminal punishments for the same offense."  *Id.* at 727-28.

Medina was indicted in both Franklin and Worcester counties for the same kind of criminal offenses – specifically, rape of a child and indecent assault and battery of a child under fourteen – committed against his stepdaughter.  The Appeals Court held, however, that none of the double jeopardy scenarios had been established in Medina's circumstances.  *Medina*, 835 N.E.2d at 308.  Regarding the Worcester County trial, Medina was retried there "based on charged offenses alleged to have occurred only in that county.  No verdict of acquittal was ever returned for the defendant as to those particular acts" in the first trial.  *Id.* Although Medina was subsequently acquitted in Franklin County, the Appeals Court determined "[t]hat prosecution . . . involved acts allegedly committed by him at times and locations distinct from those alleged in the charges brought to trial in Worcester County."  *Id.*  As a result, the Appeals Court rejected Medina's

---

[3] Massachusetts statutory and common law independently recognize a prohibition against double jeopardy.  *Commonwealth v. Woods*, 607 N.E.2d 1024, 1027 (Mass. 1993); *see also* MASS. GEN. LAWS ch. 263 § 7 ("A person shall not be held to answer on a second indictment or complaint for a crime of which he has been acquitted upon the facts and merits.").

double jeopardy claim.   *Id.*

The key Supreme Court precedent regarding double jeopardy protection is *Blockburger v. United States*, which provides the test for determining whether there is a double jeopardy violation is whether each of the multiple offenses require proof of an additional fact which the others do not.  284 U.S. 299, 304 (1932).[4]

Turning to whether the Appeals Court unreasonably applied federal law, I examine whether its decision was both incorrect and unreasonable.  *Janosky*, 594 F.3d at 47.  Medina argues that the Appeals Court erred by disregarding the fact that Franklin and Worcester counties are not dual sovereigns but political divisions of the same sovereign, Massachusetts.  This is a red herring.  The same sovereign can plainly prosecute separate crimes.  The real issue is whether there were separate crimes at issue in the Worcester and the Franklin County trials.

"It is well established that although art. 13 [of the Massachusetts Declaration of Rights] imposes some limitation on the places where a criminal defendant may be tried, it allows the Legislature discretion, consistent with the public interest and the interests of justice, to establish venue requirements for

---

[4] I find the Appeals Court decision was not on its face "contrary to" clearly established federal law simply because it relied on *Commonwealth v. Woods*, 607 N.E.2d 1024, 1027-28 (Mass. 1993), which in turn, cites *Blockburger* and its progeny.  *Id*. at 1029.

criminal trials." *Commonwealth v. Brogan*, 612 N.E.2d 656, 658 (Mass. 1993) (citation omitted).  "Venue in its modern and municipal sense relates to and defines the particular county or territorial area within the State or district in which the cause or prosecution must be brought or tried." *Commonwealth v. Dineen*, 872 N.E.2d 785, 792 n.8 (Mass. App. Ct. 2007) (quoting *Paige v. Sinclair*, 130 N.E. 177 (Mass. 1921)).[5]  As a formal matter, each county was prosecuting Medina for separate acts – albeit under the same criminal statutes for rape (Mass. Gen. Laws ch. 265 § 23) and indecent assault and battery (*Id*. at § 13B) of the same victim – that occurred within their respective jurisdictions essentially, but not entirely, during different time periods.

Medina disputes that the acts alleged in each trial were separate, as a matter of proof.  In this connection, he relies heavily on the Appeals Court's statement that "the crimes arose from a repetitive pattern of sexual abuse, spanning more than two

_____

[5] In fact, chapter 265 of the Massachusetts General Laws confers dual venue for prosecutions of cases under § 13B and § 23:

> [i]f, in connection with the alleged commission of a crime . . . the person against whom said crime is alleged to have been committed has been conveyed from one county or judicial district into another, said crime may be alleged to have been committed, and may be prosecuted and punished, in the county or judicial district where committed or from which such person was so conveyed.

Mass. Gen. Laws ch. 265 § 24A.

years, and not from discrete episodes or incidents of particular acts." *Medina*, 835 N.E.2d at 311. Medina suggests this language shows that he was already acquitted for the same crimes in Franklin, yet subsequently prosecuted and convicted in Worcester. It is, however, apparent the Appeals Court was referring to the pattern of conduct alleged in the Worcester County indictment which spanned from January 1, 1991 to April 12, 1993. By contrast, Franklin County charged Medina with specific acts that occurred *in that county* between January 1, 1986 through December 31, 1990 and October 15, 1992 through March 31, 1993.[6]

The offenses for which Medina was charged required proof of at least one additional fact that was different in the separate Worcester and Franklin indictments: that the conduct charged occurred in the county of indictment. The Commonwealth satisfied its burden of proof. The Franklin County trial focused on conduct that occurred in Greenfield and Turners Falls, communities in Franklin County. The sole witness was the victim herself. However, in the Worcester County retrial, the victim testified that Medina sexually abused her in multiple locations in Worcester: the Washington Street apartment in Gardner, the

---

[6] I recognize that the indictments overlap from October 15, 1992 through March 31, 1993, but find, upon review of the transcripts of the trials, evidence was clearly and distinctly presented in the proceedings from which the state courts could fairly conclude (and in fact did conclude in the Worcester retrial) that Medina sexually abused the victim on multiple occasions separately in each county.

12

Chestnut Street apartment in Gardner, and a campground in
Gardner. *Medina*, 835 N.E.2d at 306-07. Her report of Medina's
repeated abuse in Worcester County was bolstered by testimony
from her brother, mother, grandmother, a police officer, and the
family's roommate. *Id*. at 306. Thus, Medina was not prosecuted
for the same crimes in Worcester County, following his acquittal
in Franklin County of crimes in that county, and I deny his
double jeopardy claim.

**B.   *Specific Unanimity***

As a corollary to his Fifth Amendment double jeopardy claim,
Medina objects to the trial court's failure to instruct the jury
on specific unanimity.  "[A] specific unanimity instruction
indicates to the jury that they must be unanimous as to which
specific act constitutes the offense charged." *Commonwealth v.
Keevan*, 511 N.E.2d 534, 540 (Mass. 1987).  Massachusetts common
law recognizes the need for a specific unanimity instruction
"when, on a single charged offense, the prosecutor presents
evidence of separate, discrete incidents, any one of which would
suffice by itself to make out the crime charged," and therefore,
"in order to find the defendant guilty of the charged offense,
the jury must all agree as to at least one, specific incident."
*Commonwealth v. Santos*, 797 N.E.2d 1191, 1195 (Mass. 2003).  By
contrast, "'where the facts show a continuing course of
conduct,'" a specific unanimity instruction is not required. *Id*.

(quoting *Commonwealth v. Thatch*, 653 N.E.2d 1121, 1123 (Mass.
App. Ct. 1995)).

In cases of sexual abuse of a child, "the decisive issue at
trial is the credibility of the complainant, a jury will either
believe that a consistent and repetitive pattern of abuse has
occurred, of necessity encompassing a number of discrete acts, or
they will disbelieve it." *Commonwealth v. Kirkpatrick*, 668
N.E.2d 790, 794 (Mass. 1996) *overruled on other grounds by*
*Commonwealth v. King*, 834 N.E.2d 1175 (Mass. 2005).
Consequently, a specific unanimity instruction is not required in
such cases where "a jury [is] not offered a choice between
discrete incidents of abuse to support a single charge" because
there is no "risk of a lack of unanimity." *Id.; see also*
*Commonwealth v. Sanchez*, 670 N.E.2d 377, 382-83 (Mass. 1996)
(holding the defendant was not entitled to a specific unanimity
instruction where child victim "spoke largely in generalities"
and "did not identify discrete instances when particular acts
took place").

The Massachusetts Appeals Court denied Medina's claim that
the trial judge erred by refusing to instruct the jury on
specific unanimity. *Medina*, 835 N.E.2d at 310. The Appeals
Court found that the victim had testified in great detail about a
pattern of sexual abuse at the hands of Medina and, as a result,
there was "no reasonable likelihood the jury would have reached a

14

different result if a specific unanimity instruction had been given by the judge." *Id.* at 310-11.  The risk of jury confusion was deemed nil where "the crimes arose from a repetitive pattern of sexual abuse, spanning more than two years, and not from discrete episodes or incidents of particular acts." *Id.* at 311.

Irrespective of whether the Appeals Court erred in its construction of state law here (and I find no basis for concluding that it did), "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Habeas review "is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* at 68.  As the Supreme Judicial Court has observed, "the requirement of a specific unanimity instruction is not rooted in any constitutional principle, but in our common law" and then only in certain cases. *Commonwealth v. Walker*, 820 N.E.2d 195, 203 (Mass. 2005); *see also Medina*, 835 N.E.2d at 310 n.14.  There is no clearly established federal law determined by the Supreme Court of the United States to the contrary.  Thus, there is no basis in this claim for habeas corpus relief.

## C.   *Judicial Misconduct*[7]

Medina claims that his Sixth and Fourteenth Amendment rights to a fair trial and due process were violated based on judicial misconduct at the second Worcester trial.  He contends that the trial judge rolled her eyes during the defense closing argument and otherwise used body language, facial expressions, and intonation that expressed to the jury her admonition of defense counsel and the defendant.

With the benefit of a careful and detailed memorandum of decision by a second Superior Court judge who reviewed the issues on Medina's motion for a new trial after the trial judge recused herself, the Appeals Court found the trial record did not support Medina's claim of judicial misconduct.  *Medina*, 835 N.E.2d at 311.  Critically, even "[d]efense counsel acknowledged that she did not personally observe any inappropriate facial expressions

---

[7] The Respondent contends that Medina's claims of judicial misconduct and excessive sentencing, *infra*, are unexhausted.  To satisfy the exhaustion requirement, "the petitioner must present the federal claim fairly and recognizably to the state courts, meaning that he must show that he tendered his federal claim in such a way as to make it probable that a reasonable jurist would have been alerted to the existence of the federal question." *Clements v. Maloney*, 485 F.3d 158, 162 (1st Cir. 2007) (citations omitted).  The same legal theory must be articulated in the state and federal courts, but to do so, the habeas petitioner may simply cite a provision of the federal constitution.  *Id.* (quoting *Gagne v. Fair*, 835 F.2d 6, 7 (1st Cir. 1987)).  I find that Medina exhausted these claims because his Application for Further Appellate Review to the SJC expressly asserted Sixth and Fourteenth Amendment violations based on the trial court's alleged misconduct and imposition of an excessive sentence.

by the judge during her closing." *Id.* The Appeals Court concluded that "the trial judge's pointed instructions to the jury, directing them to disregard any notion of an opinion held by her respecting any aspect of the case or position taken by either party, were more than sufficient to cure any prejudice to the defendant." *Id.* at 312.

Medina cites no United States Supreme Court precedent to support his habeas claim for this type of unsubstantiated judicial misconduct. *Cf. Oses v. Massachusetts*, 775 F. Supp. 443, 446 (D. Mass. 1991) (granting habeas corpus relief where trial judge's conduct involved an "ostentatiously demonstrative undermining of the basic attributes of a fair and orderly proceeding"), *aff'd*, 961 F.2d 985 (1st Cir. 1992). I conclude there is no basis to find the Massachusetts Appeals Court's decision was contrary to or involved an unreasonable application of clearly established federal law. I reject this ground for habeas relief.

## D. *Sentencing*

In another dimension to his judicial misconduct claim, Medina argues that the trial judge proved her prejudice against him by imposing excessive sentences in violation of the Eighth Amendment's constitutional guarantee against "cruel and unusual punishments." After his conviction for three counts of rape of a child, MASS. GEN. LAWS ch. 265 § 23, and five counts of indecent

17

assault and battery of a child under the age of fourteen, *id*. at § 13B, Medina was sentenced to concurrent life terms for two of the rape convictions, a twenty-year term of probation for the other rape conviction, and concurrent sentences of twenty to thirty years for each of the five indecent assault and battery convictions to be served from and after the expiration of the two concurrent life terms.

A "clearly established," if highly general, legal principle in Eighth Amendment jurisprudence is that "[a] gross disproportionality principle is applicable to sentences for terms of years." *Lockyer v. Andrade*, 538 U.S. 63, 72 (2003).  However, there is "a lack of clarity regarding what factors may indicate gross disproportionality." *Id.*  Thus, "the only relevant clearly established law amenable to the 'contrary to' or 'unreasonable application of' framework is the gross disproportionality principle, the precise contours of which are unclear, [and] applicable only in the 'exceedingly rare' and 'extreme' case." *Id.* at 73.

Medina insists that his offenses were "nonviolent" and undeserving of a sentence "tantamount to a life sentence without possibility of parole, which the legislature reserves only for convictions for murder in the first degree."  It is difficult to accept his characterization of the crime, given the evidence adduced here.  Moreover, the legislature plainly contemplated

that sentences for such conduct separately or cumulatively could result in a life sentence.  More fundamentally, Medina does not reference a single United States Supreme Court case that clearly establishes a principle that a sentence such as Medina's particular sentence is so grossly disproportionate that it violates the Eighth Amendment.  I cannot, therefore, find that his sentence was contrary to clearly established precedent as required by § 2254(d)(1).

Regarding the unreasonable application prong of habeas review, I recognize "the governing legal principle gives legislatures broad discretion to fashion a sentence that fits within the scope of the proportionality principle – the 'precise contours' of which 'are unclear.'"  *Id.* at 76 (citation omitted).  The Appeals Court found that "[t]he sentences imposed were lawful and within the statutory limits," and that the trial judge "properly considered relevant factors surrounding the case" when she "adopted the prosecutor's recommendation, rejecting the defendant's request for punishment in line with the sentencing guidelines."  *Medina*, 835 N.E.2d at 313.  I hold that it was not objectively unreasonable for the Massachusetts Appeals Court to conclude that the sentence here fell within the contours of the proportionality principle and affirm Medina's sentence.  Accordingly, I deny habeas relief on this ground.

**E.    Ineffective Assistance of Counsel**

Medina maintains that his Sixth Amendment right to effective assistance of counsel was violated when trial counsel refused to honor his request to testify on his own behalf.[8]  To be entitled to habeas relief, Medina "must demonstrate that the state court's resolution of his ineffective assistance of counsel claim 'resulted in a decision that was contrary to, or involved an unreasonable application, of clearly established Federal law, as determined by the Supreme Court of the United States.'"  *Malone*, 536 F.3d at 62 (quoting 28 U.S.C. § 2254(d)(1)).  The governing federal law for ineffective assistance of counsel claims is articulated in *Strickland v. Washington*, 466 U.S. 668 (1984).  *Id.*  Although the Massachusetts Appeals Court, in its review of Medina's appeal, did not cite the *Strickland* standard and invoked *Commonwealth v. Saferian*, 315 N.E.2d 878 (Mass. 1974),[9] the First

---

[8] Medina's Petition includes other bases for an ineffective assistance of counsel claim that have no merit.  First, he argues that trial counsel failed, following the mistrial, to request a review of the legal sufficiency of the evidence in the first Worcester trial before another Worcester trial was held.  This ground is not pursued in his supporting memorandum and therefore I consider it waived.

He also asserts that trial counsel erred by failing to (1) request dismissal on grounds of double jeopardy and (2) object to the court's refusal to instruct the jury on specific unanimity. As discussed above, the underlying claims of double jeopardy and failure to give a specific unanimity instruction are inadequate grounds for habeas relief and consequently they cannot support ineffective assistance of counsel claims.

[9] *Saferian* requires an evaluation of "whether there has been serious incompetency, inefficiency, or inattention of counsel –

Circuit has held that "for habeas purposes, *Saferian* is a functional equivalent of *Strickland*" and therefore a state court does not apply a legal rule that contradicts an established Supreme Court precedent when *Saferian* is followed. *Malone*, 536 F.3d at 63 (quoting *Ouber v. Guarino*, 293 F.3d 19, 32 (1st Cir. 2002)). Accordingly, Medina's "case does not fall under the 'contrary to' category of the AEDPA." *Id.*

Nor can Medina demonstrate that the state court unreasonably applied clearly established federal law. To prevail on a constitutional claim for ineffective assistance of counsel under *Strickland*, Medina must prove "'counsel's representation fell below an objective standard of reasonableness,' and that 'the deficient performance prejudiced his defense.'" *Owens v. United States*, 483 F.3d 48, 57 (1st Cir. 2007) (quoting *Strickland*, 466 U.S. at 687-88). Where, as here, the state court applied the correct legal test, I do not address de novo the question whether trial counsel's representation fell below an objective standard of reasonableness, and instead I assess whether the state court's application of the *Strickland* standard, through *Saferian*, to Medina's ineffective assistance of counsel claim was objectively

---

behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer – and, if that is found, then, typically, whether it has likely deprived the defendant of an otherwise available, substantial ground of defence." 315 N.E.2d 878, 883 (Mass. 1974).

unreasonable.  *Phoenix v. Matesanz*, 233 F.3d 77, 82-83 (1st Cir. 2000).

As the Appeals Court correctly observed, "it is clear that a defendant has a 'fundamental constitutional' right to testify in his own defense," *Owens*, 483 F.3d at 58 (quoting *Rock v. Arkansas*, 483 U.S. 44, 51-53 (1987)), and that "[t]he right to testify may not be waived by counsel acting alone." *Id.; accord Commonwealth v. Degro*, 733 N.E.2d 1024, 1040 (Mass. 2000).  An attorney's "failure to inform a defendant of his right to testify constitutes performance outside of an objective standard of reasonable competence, and . . . such performance is constitutionally deficient" and "could be prejudicial." *Owens*, 483 F.3d at 58-59.  Here, the Appeals Court found that the second trial judge hearing Medina's new trial motion "made detailed findings of fact and concluded that the defendant had knowingly, voluntarily, and intelligently elected to forgo his right to testify, a decision he made with the advice of his counsel." *Medina*, 835 N.E.2d at 314.  In denying Medina's ineffective assistance of counsel claim, the Appeals Court held that "[t]he judge's findings and ultimate conclusion are supported by the record." *Id.*  I am obliged to accept the state court's findings in the absence of clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e).  No such evidence has been adduced.  Nothing of record establishes that trial counsel's representation fell

below an objective standard of reasonableness.  Finding that the state court decision was neither contrary to nor an unreasonable application of federal law, I reject Medina's ineffective assistance of counsel claim.

### IV. CONCLUSION

For the reasons set forth more fully above, I direct the clerk to DISMISS this habeas corpus petition.


*/s/ Douglas P. Woodlock*
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE